## The People v. Robert McKinney.

*Stenographer's notes in evidence—Contents of letters.*

Where it is sought, for purposes of impeachment, to introduce a long transcript of the stenographer's notes of testimony given in another court, and it appears that they were taken by different reporters and that one has transcribed the other's work, but that the transcript has not been compared with the original, there is no error in excluding the transcript from evidence even though the reporter testifies that his own notes are literally correct, and that he knows that his transcript of the other's is an absolutely correct copy.

A witness who testifies that he has made copies of certain letters but has lost or destroyed the copies and that he cannot remember their whole substance but does remember a part, may be permitted to give their contents as far as he can do so. But his inability to remember the whole is a proper subject on which to comment to the jury.

The taking of testimony by stenography without afterwards reading it over to the witness, is criticised as an imperfect method.

Exception from Recorder's Court of Detroit. Submitted October 19. Decided October 20.

Information for receiving stolen property. Respondent was convicted. Exceptions overruled.

Attorney General *Jacob J. Van Riper* for the People.

*William C. Maybury* for respondent.

COOLEY, J. The respondent was convicted in the Record-er's Court of Detroit of receiving stolen goods with guilty knowledge. Two objections are made to the conviction.

The respondent sought to put in evidence a copy of the stenographer's notes of the evidence given on an examination in the police court of Detroit of one Sophie Lyons, who was the supposed thief. The purpose in offering this evidence does not appear, but it is inferable that it was expected to show that one of the people's witnesses had given evidence in the police court which conflicted with that given on this trial. The testimony in the police court seems to have been taken in part by one stenographer and in part by another. One of these testified that the part he took was "correct literally as uttered by the witnesses." He also testified that he transcribed the notes of the other stenographer, and that he knew the copy made by him to be "an absolutely correct copy." It was shown, however, that the copy had never been compared, and the part offered in evidence was upwards of one hundred manuscript pages.

It may be possible that a stenographer and draughtsman may be as absolutely correct in his work as this witness supposed he was, but accuracy to this degree is so unusual and so extraordinary that we think the court was quite justified in holding that there should have been some verification of the work by comparing the supposed copy with the original notes. The taking of testimony by stenography without subsequently reading it over to the witness is a very imperfect method at the best; and when it is proposed to impeach a witness by showing that he has testified differently on different occasions, the evidence ought to be very clear that the customary precautions to prevent errors in transcription had been observed. Now no prudent man would rely in ordinary business transactions on the correctness of a manuscript copy of any considerable length which had never been compared with the original; and what would be insufficient in

ordinary business concerns must certainly be as much so in a case of proposed impeachment, where verbal accuracy might be of the highest importance.

The liability to errors in transcriptions is greatly increased when the person writing out the notes is not the one who made them, especially if he did not hear the evidence, so that he might be aided by memory in the translation of doubtful or ambiguous characters in the notes. And we are not to be understood as conceding that if the transcriber had reviewed his work with the care commonly expected, the copy would have been receivable in evidence. It is enough for the purposes of this case to say that the offer made was inadmissible.

The other objection relates to the reception of evidence to show the contents of certain lost or destroyed letters. The witness whose evidence was received testified that he made copies of the letters, but afterwards destroyed them; that he could not remember the whole substance of the letters but did remember a part, and he was permitted to give the contents so far as he was able to do so. The objection to this was based on the imperfect recollection; but this only went to the effect of the evidence, and not to its reception. A witness will seldom be able to give the exact words of a lost paper, or even, if it was of much length, the entire substance; and if that were required the proof of such papers must generally be dispensed with. But this in many cases would amount to a denial of justice.

It does not appear in this case that the witness did not recollect the substance of the letters so far as they bore on the matter under investigation. The deficiency was a proper subject of comment to the jury, and we must assume they gave it due consideration. We think it was properly left to them.

The Recorder must be advised to proceed to judgment.

The other Justices concurred.